PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAWN GUARINO GEDEON, | ) | |
| | ) | CASE NO. 4:22CV441 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| MICHELLE NICOLE FRENCHKO, *et al*., | ) | |
| | ) | |
| Defendants. | ) | **ORDER** |

### I. Background

The above-captioned case is one of several pending against the Trumbull County Board of Commissioners. The instant case is distinguishable in that it is one of the few naming Defendant Frenchko, one of the Commissioners, individually.[1] Having become concerned that public comment attributed to Defendant Frenchko would taint the prospective jury pool[2], inhibit any party's right to a fair trial, and disrupt the Court's ability to "'maintain appropriate decorum in the administration of justice and [] protect the rights of the litigants from prejudice, '" the Court consulted with counsel[3] and, thereafter, *sua sponte* issued a Gag Order. *See* Gag Order, ECF No. 5 (indicating that, among other things, "Courts have long recognized that 'the trial court

---

[1] *See also*, 4:21-cv-02276-CEF – *Glenn v. Frenchko, et al.*
4:22-cv-01192-JRA – *Blair v. Frenchko, et al.* *Cf.* 4:22-cv-00077-BYP – *Cook v. Board of Trumbull County Commissioners, et al.*; 4:22-cv-00441-BYP – *Gedeon v. Frenchko, et al.*; and 4:22-cv-01005-BYP – *Vivoda-Klotz v. Trumbull County Board of Commissioners*
[2] All parties, in the instant case, have made a jury demand.
[3] *See* 3/28/2022 Minutes (indicating that "[t]he parties discussed the issuance of a Gag Order as a tool to prevent further problematic public comment on the instant matter.").

(4:22CV441)

may *sua sponte* issue a Gag Order upon the parties to the litigation without an evidentiary hearing'") (internal citation omitted).[4]

Shortly after issuing the Gag Order, the Court conducted a previously scheduled telephonic Case Management Conference ("CMC"). During the CMC, counsel for Plaintiff advised the Court of his suspicion that Defendant Frenchko had violated the Gag Order. *See* 7/18/2022 Minutes (indicating that all parties, including Defendant Frenchko were present). After discussion with counsel, Defendant Frenchko was ordered to show cause as to why she had not violated the Gag Order. Defendant submitted a timely response. ECF No. 17. After reviewing Defendant's response, the Court imposed a date by which Plaintiff should respond, if so inclined. Plaintiff replied, accordingly. *See* ECF No. 17; ECF No. 19. Having been informed by the parties' filings[5], the Court scheduled a hearing on the Show Cause Order. On September 12, 2022, the Court conducted a hearing on the Show Cause Order.[6]

Present at the hearing were Plaintiff Gedeon, Attorney Dennis R. Fogarty, counsel for Plaintiff, and Ryan Kun (a recent law school graduate) accompanying Plaintiff's counsel. Defendant Frenchko[7] along with Attorneys Kenneth E. Smith, Michael P. Quinlan, and Kathleen M. Minahan were also present.

---

[4] It is also worth noting that, during the telephonic Status Conference held prior to issuing the Gag Order, the Court discussed with counsel the specific language sufficient for the task identified above. *See* 3/28/2022 Minutes.
[5] On the morning of the hearing, Plaintiff's counsel filed a Supplemental Brief alleging additional violations of the Gag Order. *See* ECF No. 29.
[6] The Show Cause hearing was continued to allow Defendant Frenchko to obtain conflict-free ("special") counsel. *See* ECF No. 26 (granting Defendant Frenchko's motion to continue).
[7] As explained in greater detail below, Defendant Frenchko attended electronically.

2

(4:22CV441)

## II. Arguments

During the hearing, Plaintiff's counsel emphasized that the Gag Order (ECF No. 5) was "elegant in its simplicity" and clear in its intent to have the parties refrain from making any public comments about the case. Plaintiff's counsel argued that, despite this obvious clarity, Defendant Frenchko repeatedly engaged members of the public on Facebook, and by her comments during a radio interview, in violation of the Gag Order. Plaintiff's counsel marked several instances, following the scheduling of the Show Cause proceedings, in which Defendant publicly attacked the merits of the allegations being made against her in this case and others, including recorded comments Defendant Frenchko made at a Trumbull County Commissioners meeting held on September 8, 2022. *See also* ECF Nos. 19 and 29. Counsel concluded his remarks by emphasizing that Defendant Frenchko had adequate notice of the Gag Order's minimal restrictions and, nevertheless, purposely violated the Gag Order. Persuasively, Plaintiff's counsel opined that Defendant Frenchko's actions were intentionally designed to taint the prospective jury pool.

Essentially, special counsel for Defendant Frenchko retorted that Defendant Frenchko misunderstood the Gag Order, or that the Order was impermissibly vague and violative of her constitutional right to free, unrestrained speech. Counsel also intoned that as a politician, Defendant Frenchko's speech is political and thus protected.

## III. Ruling

The Gag Order was born of necessity.[8] Trial courts have "an affirmative constitutional duty to minimize the effects of prejudicial [pretrial] publicity." *Gannett*

---

[8] *See United States v. Brown*, 218 F.3d 415, 423 (5th Cir. 2000) (finding a "gag order is constitutionally permissible [when] it is based on a reasonably found substantial

3

(4:22CV441)

Co. DePasquale, 443 U.S. 368, 378 (1979). "Paramount among these dangers is the potential that pretrial publicity may taint the jury venire, resulting in a jury that is biased toward one party or another." Brown 218 F.3d at 423.

"Although litigants do not 'surrender their First Amendment rights at the courthouse door,' those rights may be subordinated to other interests that arise in the context of both *civil* and criminal trials. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 37 n.18 (emphasis added). The Court is not ignorant of the delicate balance required when issuing an order restraining the freedom of expression. See United States v. Ford, 830 F.2d 596 (qualifying the court's use of over-broad restrictions on speech in connection with litigation). To respect that balance, the Court imposed an Order that was narrowly tailored and written in easily digestible language designed to protect the interests of the parties and the public against the prejudicial effects of pretrial publicity while allowing the Court to fairly administer justice. "In securing freedom of speech, the Constitution hardly meant to create the right to influence judges or juries." Pennekamp v. State of Fla., 328 U.S. 331, 366 (1946) (Frankfurther, J concurring).

In imposing its Gag Order, the Court considered the several pending cases that would be adversely affected by the comments attributed to Defendant Frenchko. The Court, in consultation with counsel[9], carefully chose language no greater than that essential to preserving the right to a fair and impartial trial and limited its restrictions to not intrude outside of necessary boundaries, like the workplace. To provide clear guidance, the Court simply and concisely instructed the parties not to talk about the case while allowing the parties to proceed with their

---

likelihood that comments from the lawyers and parties might well taint the jury pool, either in the present case or [a] related case.").
  [9] *See* 3/28/22 Minutes.

(4:22CV441)

daily work lives. The language of the Gag Order was to be given its ordinary meaning. *See Smith v. United States*, 508 U.S. 223, 228 (1993); *Perrin v. United States*, 444 U.S. 37, 42 (1979) (noting that courts interpret words in accordance with their ordinary meanings when they are not defined by statute). The Court thoughtfully chose words that required nothing more than *common sense* to be completely understood and obeyed.[10] The words of the Gag Order were selected precisely because they were capable of being understood by those with natural (not enhanced) intelligence---that is, those capable of the formation of sound judgment, free of emotional bias. The best evidence of the appropriateness of the words chosen is that none other than Defendant Frenchko has been alleged to have violated the Gag Order.

The Court rejects Defendant Frenchko's assertion that the Gag Order is vague or represents an overbroad restraint on Defendant's right to free speech. *See Affeldt v. Carr*, 628 F. Supp. 1097, 1101 (N.D. Ohio 1985) (noting that gag orders do not violate a party's free speech rights so long as there is evidence that the Court finds "imminent prejudice to the administration of justice"). Importantly, Defendant Frenchko's role as a politician does not insulate her from the directives set forth by Orders of the Court. *See, e.g., Brown* 218 F.3d at 418 (affirming *sua sponte* a gag order imposed on a prominent Louisiana politician because the Court found that his public comments "could interfere with a fair trial").

---

[10] Societal understanding of the term "common sense" has remained markedly consistent over time. In 1899, the *Century Dictionary Cyclopedia; a Work of Universal Reference in All Departments of Knowledge with a New Atlas of the World* defined common sense as the faculty in which the various reports of several senses are reduced to the unity of common apperception. The 1933 *Oxford English Dictionary* defined common sense as the endowment of natural intelligence possessed by rational beings. The 1966 *Webster's Third New International Dictionary* defined it as good sound ordinary sense; good judgment or prudence. The 2011 *American Heritage Dictionary of the English Language* defines common sense as sound judgment not based on specialized knowledge.

(4:22CV441)

In summary, Defendant Frenchko's behavior, in the face of the Gag Order, has been irresponsible at best and reckless at worst. Her repeated comments about *this* and other litigation could be, as urged by Plaintiff, seen as a violation of the Gag Order.[11] Assuming the more restrained position, at this time, and giving Defendant Frenchko the benefit of being capable of *not* having understood the Gag Order without the instruction given at the recently held hearing and within this writing, the Court admonishes Defendant Frenchko and issues the modified Gag Order below. This modified Gag Order has, as before, been vetted by counsel and shall serve as the final warning for all parties and counsel.[12] Should further modification be required, counsel need only ask the Court.

### IV. Consequences

#### A. Breaching the Gag Order

As discussed during the Show Cause hearing, the Court is vested with the authority to impose appropriate sanctions for any breach of the Gag Order. All parties and counsel are hereby placed on notice that any violation of the Gag Order, as modified, will draw consequences. The possible consequences include, but are not limited to, a monetary fine for each instance in which a party/side or counsel is found to have violated the Gag Order, litigative consequences such as the dismissal of the complaint or the barring of a party from opposing any dispositive motions, for example, or imprisonment of the offending party or counsel. *See* 18 U.S.C. § 401(3).

---

[11] No party shall gain confidence from this liberal conclusion. All parties and counsel should realize that what began as merely a "prophylactic attempt" to avoid prejudicing the parties in the above-captioned and related cases will not continue to be such. *Brown* 218 F.3d at 431.

[12] During the hearing, the Court asked counsel for suggestions on modifications to the Gag Order.

6

(4:22CV441)

As it is well known, the Court draws potential jurors from Trumbull, Mahoning, and Columbiana counties.  Should the Court determine that the jury pool has been tainted, purposefully or otherwise, by a violation of the Gag Order, the Court will relocate the case to a venue where a fair and impartial jury can be impaneled.[13]  Should any party/side or counsel make relocation necessary, the Court will impose additional sanctions upon the offending party/side or counsel, including, but not limited to, the costs incurred by the Court and other affected litigants to move the case from the Lambros Courthouse located in Youngstown, Ohio to any other location.

### B. Lacking Decorum

Decorum in court is governed by Orders of the Court, including Local Rules and General Orders, and the Orders of the undersigned.[14]  Two matters that occurred at the hearing cause the Court to draw reminders to the attention of counsel and parties.

Local Rule 83.3 regards dress and behavior in each courthouse within the Northern District of Ohio.  Specifically, that Rule imparts:

> Rule 83.3 Courtroom and Courthouse Decorum
>     (a) No loitering, sleeping, or disorderly conduct is permitted in any Court buildings.
>
>     (b) No food, drink, cards, placards, signs or banners are permitted in any courtroom or adjoining areas, except as permitted by the Court.

---

[13] Despite Defendant's claims to the contrary, the right to an impartial jury in civil matters is inherently preserved in the right to trial by jury under the Seventh Amendment. *See McCoy v. Goldston*, 652 F.2d 654, 657 (6th Cir. 1981) ("The right to an impartial jury in civil cases is inherent in the Seventh Amendment's preservation of a 'right to trial by jury' and the Fifth Amendment's guarantee that 'no person shall be denied of life, liberty or property without due process of law.'").

[14] *See Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir. 1997) ("[T]he presiding judge is charged with the responsibility of maintaining proper order and decorum.  In carrying out this responsibility, the judge must ensure 'that [the] courthouse is a place in which rational reflection and disinterested judgment will not be disrupted.'").

(4:22CV441)

The prohibition against "signs" includes messages worn on face masks. While masks are required, they shall broadcast no message.

Additionally, the Court operates pursuant to various Orders issued by the Chief Judge of the Northern District of Ohio known as General Orders. The General Order of the Court dated April 5, 2022, states:

> [u]pon entering courtrooms, judges' chambers and offices, or any space where a court proceeding is being conducted, all persons must comply with the rules and requirements of the presiding judge regarding face coverings.

The undersigned requires face masks during hearings and the parties and counsel were so informed by Court personnel. At the hearing, all present complied with the General Order except Defendant Frenchko who, just as the hearing was scheduled to begin, alleged a "medical exemption." When questioned, defense counsel emailed an unsigned and undated document to the Court's staff purportedly issued to Defendant Frenchko. Assuming without deciding the validity of Defendant Frenchko's medical condition or exemption, and, despite the defense's failure to give timely notice of any health concerns, the Court delayed the substantive start of the hearing and arranged for Defendant Frenchko to attend electronically from a witness room a few feet from the Courtroom. Although collectively counsel had indicated early on in the hearing that neither side intended to call witnesses, including Defendant Frenchko, the record reflects that defense counsel had full access to their client.

Counsel are hereby on notice that, absent some unforeseen circumstance, any further accommodations shall be sought sufficiently in advance of its requirement—that is not less than 48 hours before any appearance before the Court, and appropriately justified.

### V. Modified Gag Order

The Court hereby orders all parties and counsel to cease and desist from making comment, either directly or indirectly, disseminated by any means, including but not limited to

8

(4:22CV441)

press, radio, and social media outlets, regarding matters concerning the above-referenced case. Parties may engage in appropriate workplace communications that do not regard this litigation. The parties may refer interested persons to the docket for matters publicly available or to their counsel.

    IT IS SO ORDERED.

| | |
|---|---|
| September 19, 2022 | /s/ *Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |